UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| ERIC CHILDRESS, | ) | Civil Action No.: 4:08-1579-JMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| FCI BENNETTSVILLE WARDEN MR. | ) | |
| PETTIFORD, et. al, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, was at all times relevant to the incidents set forth in his Complaint, housed at the Federal Correctional Institution located in Bennettsville, South Carolina (FCI Bennettsville).  Plaintiff raises claims pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)[1], complaining that Defendants were deliberately indifferent to his serious medical needs and that they failed to protect him from an excessive risk to his safety.

On March 23, 2010, the district judge entered an Order (Document # 99) adopting the undersigned's Report and Recommendation (Document # 95) and dismissing all claims and all Defendants except for one individual capacity claim against Defendant Cash, that is, that he knowingly put Mr. Childress in a recreation area with others known to pose a threat to his safety,

---

[1]A Bivens claim arises when a federal government official, acting under color of federal law, violates a individual's rights under the United States Constitution. Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). The undersigned notes that case law involving § 1983 claims is applicable in Bivens actions and vice versa. Farmer v. Brennan, 511 U.S. 825 (1994).

which resulted in Mr. Childress being assaulted.  Plaintiff filed an Third Amended Complaint (Document # 108) reiterating this one claim.  Defendant Cash filed an Answer (Document # 110).

Presently before the Court is Plaintiff's Motion for Summary Judgment (Document # 113) and Defendant Cash's Motion for Summary Judgment (Document # 117).  Because he is proceeding pro se, Plaintiff was warned pursuant to  Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's Motion for Summary Judgment could result in the dismissal of his claims.  Plaintiff timely filed a Response (Document # 120) to Defendant's Motion.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because these motions are potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II.    FACTS AND FACTUAL ALLEGATIONS

In his Third Amended Complaint (Document # 108), Plaintiff alleges,

On July 31, 2007, Plaintiff was an inmate housed at the Federal Correctional Institution (FCI) in Bennettsville, South Carolina.  Plaintiff was housed in the "special housing unit" (SHU) on this date.  Defendant Cash along with several other officer/employees were assigned to the (SHU) and as part of their duties they were required to remove inmates from their cells and place them in "recreation cages" for recreation purposes.  Plaintiff advised defendant Cash that his life may be in danger if placed in a recreation cage with certain named inmates housed therein the (SHU) on July 31, 2007.  Defendant Cash deliberately with knowledge of plaintiff's immediate threat to his safety, placed plaintiff in a recreation cage with inmates Defendant Cash knew would assault plaintiff.  Part of the (SHU) policy at FCI Bennettsville and other Bureau of Prisons facilities, is that inmates housed in (SHU) must be handcuffed "behind" their backs prior to opening cell doors. Defendant Cash placed handcuffs on plaintiff behind plaintiff's back prior to removing plaintiff from his assigned cell and escorted plaintiff to the recreation area inside the (SHU).  Defendant Cash pushed plaintiff into the recreation cage to where the inmates identified by plaintiff to defendant Cash were therein and secured the door.  Defendant Cash left plaintiff handcuffed and walked away from the recreation cage at which point the plaintiff was assaulted by other prisoners therein the recreation

cage. The prisoners therein the recreation cage where plaintiff was placed were not in handcuffs. Plaintiff suffered injuries as a result of the assault and received inadequate medical treatment for those injuries. Defendant Cash acted deliberately indifferent to plaintiff's safety by placing him in danger while knowing that other prisoners therein the recreation cage would inflict injuries to plaintiff.

Third Amended Complaint pp. 2-3.

Defendant submits the Declarations of Lamarr Tellis and Defendant Cash (attached as Exhibits B and C, respectively, to Defendant's Motion). Both Tellis and Cash are Senior Officer Specialists employed at FCI Bennettsville. Tellis Dec. ¶ 1; Cash Dec. ¶ 1. Tellis declares that on July 31, 2007, he was moved in the SHU to work as the Recreation Officer. Tellis Dec. ¶ 5. When he arrived, the prior officer had already prepared the recreation list and determined which inmates could recreate together based on known security needs. Id. At approximately 1:00 p.m., Defendant Cash and Officer Tellis escorted Plaintiff to the recreation area. Tellis Dec. ¶ 6; Cash Dec. ¶¶ 2, 4. Plaintiff never told Defendant Cash that he needed to be kept away from any other inmate, much less the one that assaulted him. Tellis Dec. ¶ 6; Cash Dec. ¶ 4. The assailant, Daughtridge, was already in the recreation area, along with several other inmates. The inmates in that recreation area had been taken there in hand cuffs, but those restraints had been removed after they were placed in the recreation area. Tellis Dec. ¶ 7; Cash Dec. ¶ 5. When Plaintiff arrived at the door, the other occupants of the recreation area, including the eventual assailant, were directed to step to the back of the area, which they did. Tellis Dec. ¶ 7; Cash Dec. ¶ 5. Plaintiff did not say anything to Defendant Cash about fearing for his safety. Tellis Dec. ¶ 7; Cash Dec. ¶ 5. Plaintiff was placed in the recreation area and the door was secured. Tellis Dec. ¶ 8; Cash Dec. ¶ 6. Plaintiff turned to have his restraints removed and another inmate assaulted him, striking him in the facial area. Tellis Dec. ¶ 8; Cash Dec. ¶ 6. Defendant Cash immediately ordered the inmates to cease and opened the door,

pulling Plaintiff away from the assailant. Tellis Dec. ¶ 8; Cash Dec. ¶ 6. Tellis grabbed Plaintiff and reapplied the restraints. Tellis Dec. ¶ 8. Defendant Cash controlled the assailant and both inmates were secured in separate areas. Tellis Dec. ¶ 8; Cash Dec. ¶ 6. They both received a medical assessment which revealed a superficial abrasion with minor swelling above Plaintiff's right eye and a minor abrasion to the right forearm. Memorandum dated July 31, 2007 (attached as Exhibit D to Defendant's Motion); Injury Assessment for Plaintiff dated July 31, 2007 (attached as Exhibit E to Defendant's Motion). Both Officer Tellis and Defendant Cash prepared a memorandum immediately after the incident. Tellis Dec. Attachment 1; Cash Dec. Attachment 1.

Both Plaintiff and the assailant were interviewed. Memorandum dated July 31, 2007. The assailant stated that he and Plaintiff had some discussion the prior evening about Plaintiff wanting to collect stamps from him in payment for a third inmate who was doing the assailant's hair. Id. The assailant stated he told Plaintiff that he would not give him stamps and Plaintiff stated he was going to stab the assailant on the recreation yard. Id. The assailant stated that when staff put Plaintiff in with him that day, he went after Plaintiff before Plaintiff could go after him. Id.

Plaintiff told staff that the assailant had been egging him on the range, making fun of him because he got his arm closed in a food slot. Id. Plaintiff stated the assailant said "we would see on the recreation yard," and that Plaintiff agreed. Id. When staff put them together, the assailant punched him in the face. Id. Plaintiff stated that all he wanted was for staff to put them back together so that Plaintiff could "kick his ass." Id. Plaintiff stated that if staff would put him with the assailant, he would "drop all . . . charges against the Bureau." Id. Plaintiff and the assailant were not put back together and staff made notations to keep them separated while in SHU. Id.

## III.    STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper.  Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof.  Celotex, 477 U.S. 317.  Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial.  Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991).  However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  See Celotex, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel

Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993);

Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION[2]

Plaintiff alleges that Defendant Cash failed to protect him from the physical harm he suffered

at the hands of Daughtridge.  Defendant Cash asserts that he is entitled to qualified immunity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396

(1982), established the standard which the court is to follow in determining whether the defendant is

protected by this immunity. That decision held that government officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has previously held that "a

court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional

right at all and, if so, proceed to determine whether that right was clearly established at the time of the

alleged violation." Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); see

also Saucier v. Katz, 533 U.S. 194, 201 (2001); Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th

Cir.2000).  However, recently, the Supreme Court ruled that courts are no longer bound to follow the

two-part inquiry for qualified immunity that had been required by Saucier.  Pearson v. Callahan , 555

U.S.223, 129 S.Ct. 808, 818 (2009).  As the Court noted, "judges of the district courts and the courts

of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs

of the qualified immunity analysis should be addressed first in light of the circumstances in the

---

[2]Because Plaintiff's and Defendant's Motions for Summary Judgment address the same
issue, the Motions will be discussed together.

particular case at hand." Id. at 819.  The Pearson Court clarified that Courts may still apply the two-part inquiry from Saucier when that "order of decision-making will best facilitate the fair and efficient disposition of [the] case." Id. at 821.

In Maciariello v. Sumner, 973 F.2d 295 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F.2d at 298.

Qualified immunity is a privilege that provides "an immunity from suit rather than a mere defense to liability." Saucier, 533 U.S. at 200-01. This doctrine "– which shields Government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights – is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." Iqbal, 129 S.Ct. at 1945-46. For this reason, the Supreme Court instructs courts to resolve "immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991).

Defendant Cash asserts that he is entitled to qualified immunity because he did not violate Plaintiff's constitutional rights by failing to protect him from another inmate.  The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994); see also Helling v. McKinney, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976). To be actionable, such harm must result from "the deliberate or callous indifference of prison officials

-7-

to specific known risks of such harm." Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987). The

Fourth Circuit requires a showing of "serious or significant physical or emotional injury." De'Lonta

v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003).

     "Deliberate indifference is a very high standard-a showing of mere negligence will not meet

it." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). An officer is deliberately indifferent to a

substantial risk of harm to a prisoner when that officer "knows of and disregards" a risk. Farmer, 511

U.S. at 837. In order to be liable under this standard, "the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference." Id. "Deliberate indifference requires a showing that the defendants actually

knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew

of and ignored a detainee's serious need for medical care." Young v. City of Mount Ranier, 238 F.3d

567, 575-76 (4th Cir. 2001).  "A claim of deliberate indifference . . . implies at a minimum that

defendants were plainly placed on notice of a danger and chose to ignore the danger notwithstanding

the notice." White ex rel. White v. Chambliss, 112 F.3d 731, 737 (4th Cir. 1997).  Liability under

this standard requires two showings (1) the evidence must show that the official in question

subjectively recognized a substantial risk of harm, and (2) the evidence must show that the official

subjectively recognized that his actions were inappropriate in light of that risk.  Parrish ex rel. Lee

v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004). It is not enough that the officers should have

recognized a risk; they actually must have perceived the risk. Id.; Rich v. Bruce, 129 F.3d 336, 340

n. 2 (4th Cir. 1997).

     It is undisputed that Plaintiff was assaulted by another inmate on July 31, 2007.  Plaintiff

alleges that he told Defendant Cash on July 31, 2007, that his life may be in danger if he was placed

in a recreation cage with certain specific inmates. However, Plaintiff fails to present evidence to support this allegation. Plaintiff's self-serving statements, without more, are insufficient to create a dispute of fact that Cash knew of and disregarded a substantial risk harm to Plaintiff's safety. See Larken v. Perkins, 22 F. App'x 114, 115 n. * (4th Cir.2001) (noting that non-movant's "own, self-serving affidavit containing conclusory assertions and unsubstantiated speculation, ... [is] insufficient to stave off summary judgment"); see also Fuller v. County of Charleston, 444 F.Supp.2d 494, 499 (D.S.C.2006) ("It is well established that a court does not abuse its discretion by striking portions of a party's affidavit consisting of conclusory statements or self-serving opinions without objective corroboration."). Both Defendant Cash and Tellis declare that Plaintiff never told Defendant Cash that he needed to be kept away from any other inmate, much less the one that assaulted him. Additionally, when Plaintiff was interviewed following the assault, he did not mention that he told Cash to keep him away from the assailant or that his life was in danger. Even if Plaintiff did tell Defendant Cash that he feared for his life, the Court must be concerned with the risk as the officer perceived it, "not as a reasonable officer under the circumstances should have perceived it and not as it now may be perceived enlightened by the benefit of hindsight." Parrish, 372 F.3d at 304. Defendant Cash placed Plaintiff in his assigned recreation area, which had been designated by another officer after review of available security information to determine which inmates could be placed together. In his Motion for Summary Judgment, Plaintiff asserts that Defendant Cash stated, "don't be a p___y none of these inmates will do anything to you." Response (Document # 113) p. 2. Viewing these "facts" in the light most favorable to Plaintiff, although Plaintiff told Cash that his life may be in danger if put in a recreation cage with Daughtridge, Cash relied on the security information provided to him by another officer which indicated that it was safe

for Plaintiff and Daughtridge to be placed in the same recreation cage.  Thus, while Cash's actions

may have been negligent, they do not rise to the level of deliberate indifference.  Defendant Cash did

not recognize a substantial risk of harm to Plaintiff's safety or that his actions were inappropriate in

light of that risk.  Plaintiff fails to meet his burden of presenting sufficient facts to create a dispute

as to whether Cash deprived Plaintiff of his constitutional rights.  Thus, Defendant Cash is entitled

to qualified immunity and summary judgment is appropriate.

However, even if the Court were to find that Plaintiff has established some theory of liability

upon the part of Cash, and therefore, the existence of a constitutional deprivation, Cash is still entitled

to qualified immunity. The record before the Court shows that as to Plaintiff and the specific events

at issue, Cash performed the discretionary functions of his official duties in an objectively reasonable

fashion. He did not transgress any statutory or constitutional rights of Plaintiff of which he was aware

in the discretionary exercise of his professional judgment.  Thus, to the extent the district finds that a

constitutional violation occurred, Cash is still entitled to qualified immunity and summary judgment

is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Plaintiff's Motion for Summary

Judgment (Document # 113) be denied,  Defendant's Motion for Summary Judgment (Document #

117) be granted and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 27, 2011
Florence, South Carolina

**The parties are directed to the important notice on the following page.**

-10-